FRANCIS A. KOPP et al., Appellees, v. ROBERT G. WILLIAMSON, Appellant.

No. 46464.

June 6, 1944.

Rehearing Denied September 23, 1944.

Stilwill, Brackney & Stilwill, of Sioux City, for appellant.

Shull & Marshall, of Sioux City, and Roseberry & Pitts, of LeMars, for appellees.

Bliss, J.— The defendant has an elevator at Merrill, in Plymouth County, Iowa, about sixteen miles from Leeds, a suburb of Sioux City, and has operated a grain and feed busi-

ness in connection with his elevator for many years. He disposed of some farm land in Nebraska and received some vacant residence lots in Leeds. E. L. Dealy was a real-estate dealer in Sioux City, and he and Williamson, about June 1940, entered into a sort of partnership or joint adventure in which Dealy would procure purchasers for the defendant's lots in Leeds, and would construct the necessary improvements thereon, through first-mortgage loans made by the plaintiff bank to the purchasers, the payments of which were guaranteed by the Federal Housing Administration. Dealy was to give the project his time and attention. He procured the purchasers, introduced them to the bank, prepared the contracts, made the building contracts, purchased the material, secured the labor, and attended to all matters essential to the full performance of the contracts. Williamson executed deeds to the various purchasers and delivered them to Dealy as the latter called for them, and, except for occasional visits to the improvements to see in general how they were progressing, he gave no attention to the project. They had a memorandum agreement that after the payment of all promotional, administrative, and construction expenses, and $1,600 to defendant for the lots, they were to split the profits, if any, equally. Dealy put no money into the project and defendant put in nothing but his lots. The consideration in each contract for the sale of a lot was about five or six thousand dollars. The contracts were executed by the defendant by Dealy, and by the purchasers. Each called for a cash payment of approximately ten per cent of the contract price, and the remaining ninety per cent was to be covered by the loan. As soon as the contract and the building specifications and contract were sent by the bank to the FHA office at Des Moines an inspector would be sent to Leeds to examine the property and make desired investigations. If the contract and plan were approved the bank was so notified by a commitment guaranteeing payment of the loan. The bank then placed the amount of each loan in a cashier's check, which it retained and reissued in lesser amounts as withdrawals were made in the progress of the construction. The Kopp-Williamson contract was made on June 5, 1941. It described the lot which was sold, and bound the contractor to make the improvements in a good and substantial manner, and to furnish all material

and labor necessary to construct a residence and garage. The contract price was $4,900, of which $500 was paid in cash. Inspections were to be made by the FHA from time to time, and the contract provided that $600 was to be paid on the completion of the basement walls, $1,800 on the completion of the roof and the building enclosed, and the balance of $2,000 when the buildings were completed and the final inspection made and approval given by the FHA. The contract provided that the contractor would furnish the owners waivers of liens in writing from time to time as required. All contracts were alike except as to the contract price and payments. On the first day of June 1940, the defendant executed a power of attorney making Dealy his lawful attorney:

" * * * to execute contracts for the sale and purchase of real estate, to release mortgages, to make contracts of all kinds for the purpose of carrying on the business of building and selling houses, in Sioux City, Iowa, and to execute any and all legal documents in connection with said business * * *. Giving and granting unto the said attorney full power and authority to do and perform all and every act and thing whatsoever required and necessary to be done in the premises as fully as I might or could do if personally present, reserving the right to revoke this power at pleasure; and I hereby ratify and confirm all that the said attorney may lawfully do in the premises by virtue thereof."

This writing was recorded in the recorder's office of Woodbury county. The deed from defendant to the Kopps is dated July 9, 1941. Their mortgage to the plaintiff bank securing $4,400 bears date of July 10, 1941, and was recorded July 16, 1941. Payments under the contract were made to the contractor (defendant) by the bank upon written orders from Mr. Kopp. When the first payment of $600 was authorized by the FHA, Kopp directed the bank to pay Dealy $650, and Dealy took $50 in cash and directed the bank to place $600 in the defendant's checking account in the bank. And when the payment of $1,800 was authorized, Dealy took $100 in cash, and $1,900 was placed in defendant's account. Money was drawn from this account on checks drawn only by Dealy and signed, "Robert G. Williamson, by E. L. Dealy." There were fourteen of the de-

fendant's lots and houses built thereon under the power of attorney to Dealy. Nine of the contracts were completely performed and the property delivered to the respective purchasers free of all liens except the mortgage encumbrance. The buildings on three of the lots, one of which was the Kopp lot, were completed, or practically so except for the street paving, but mechanic's liens had been filed against the properties. Between December 23, 1941, and January 12, 1942, seven mechanic's liens, aggregating $2,740.67, were filed, and there were lienable claims not filed totalling $297.53. To prevent foreclosure of these liens, and after demanding of Dealy that he pay them and deliver waivers of the liens to Kopp, the bank took assignments, in February 1942, of all of these liens and claims in the amount of $3,038.20 and paid them. It also took an assignment from the Kopps, on August 18, 1942, of all their rights and claims and causes of action against the defendant. Dealy died on December 26, 1941. The defendant then came to the bank and demand was made by the bank that he pay the liens and procure releases. This he refused to do with respect to the Kopp house and two other houses. He performed the contracts covering two other unfinished houses.

In taking up the liens the bank used the balance of the Kopp loan in the amount of $1,348.50. It also kept in a special account upon orders from FHA the sum of $305 or double the amount necessary to pay for the Kopp paving.

The bank brought this suit for specific performance and joined the Kopps as plaintiffs. It prayed judgment and decree against the defendant requiring him to specifically perform the contract and deliver the property with merchantable title and free from all liens but its own first mortgage. It further prayed that if defendant failed to pay the liens and provide releases judgment be entered for plaintiffs for all damages sustained.

Defendant answered alleging that the Kopps had no cause of action and were entitled to no relief, and asked that the cause be dismissed as to them. The answer admitted the filing of the liens but denied that they were liens against the property, because the plaintiff had paid them. It was also alleged that the loan proceeds were deposited in the bank to pay for the improvement of the lot, but the bank misappropriated a large part of

the funds by permitting Dealy to withdraw them for his own personal use, and for purposes other than the improvement of the lot, and that otherwise the funds would have been ample to pay all construction charges. Plaintiffs filed a specific denial in reply. A decree for plaintiffs was entered September 2, 1943, and an appeal was perfected September 24, 1943, so that the appeal is under the new Rules. The decree reviewed the facts and the law and entered judgment for plaintiffs in the sum of $1,537.20, with the proviso that it might be reduced by the defendant's filing releases of liens within thirty days.

On the appeal the appellant presents the following propositions: (1) That the Kopps were not proper parties (2) that plaintiffs had a plain and adequate remedy at law (3) that there was no competent evidence of any lienable claims against the property (4) that the bank was barred and estopped from asserting any claim by reason of its negligence in handling the defendant's account.

I. Respecting the first and second propositions it appears to the court that they are without merit. While the Kopps had assigned their cause of action to the bank, they were nevertheless the owners of this property and entitled to it free from all liens except the first mortgage. They were interested in having this result accomplished. They might properly join the bank in seeking the specific performance of the contract, which required that they be protected from these liens. The bank was similarly interested and had sought to protect its mortgage lien and to save itself from loss and expense by buying the liens. The petition set up equitable grounds and prayed for equitable relief, notwithstanding the judgment entered was for money.

Rules 23 and 25 of the Rules of Civil Procedure, effective July 4, 1943, relative to parties plaintiff and necessary parties, are broad and liberal in their provisions. The Kopps come fairly within them. Furthermore, the defendant filed answer and proceeded to trial and by no preliminary pleading did he challenge the forum or venue, or move to transfer to the law side, by complying with Rule 27, or with Code sections 10944-10949.

■ II. Without going into detail, it is our conclusion that the amounts and the validity of the mechanic's liens and the lienable claims were established. In fact, there is no real denial of them. The filing of the liens was admitted by the defendant. Kopp, who was on the lot every day, testified to services performed and materials furnished by all of the claimants. The defendant was the one who procured the labor and material through Dealy. He was the one who agreed to protect against the liens and to provide waivers, and yet he neither pleads nor offers proof of their invalidity in any way.

■ III. There is no evidence of any misappropriation of any part of the account of the defendant to the benefit of the bank. It trusted Dealy, just as defendant did. For a year he had performed the contracts faithfully and honestly and paid all construction bills on nine houses. He had unlimited authority. Twice, when defendant's account was apparently short of funds because the FHA inspections were late, he gave his personal note to the bank for $500, but the money went into the defendant's account, and the notes were paid when the bank replenished the account upon the order of FHA and Kopp. The fact that Dealy sometimes drew out cash would not necessarily indicate that it was not paid out for defendant's benefit. Over $35,000 passed through the defendant's account. However, since there were fourteen contracts averaging $5,000 each, at least $70,000 was disbursed by Dealy for defendant. At least half of it must have been paid out in cash or through other banks. The fact that there were checks payable to cash amounting to $3,000 or more does not establish that it was not used in the business. Defendant testified that, while he and Dealy had talked about profits, he had never received any. The construction contracts and the work might have been improvidently let and done, and there might have been legitimate losses. Defendant testified he never knew he had an account at the plaintiff bank, and yet he admitted that he knew the firm must have had a bank account, and that the business was not done on a cash basis. He never made any inquiry about bank statements or canceled checks. He made no inquiry about whether labor or material was being paid for, although he had obligated himself to secure lien waivers, and yet he charges the bank

with negligence in not discovering what he gave no thought or attention to. It may be that Kopp and the bank might have been more watchful in ascertaining whether the labor and materialmen were being paid, and yet each had a right to rely upon the defendant's performance of the contract, particularly when there were no reasonable grounds to believe that it was not being done. The defendant gave Dealy extremely broad powers. In view of this unrestricted authority, and the apparent complete confidence which defendant placed in him, we find nothing in the record which would reasonably have apprised the bank of any breach of trust on Dealy's part, or which required any duty or need on its part to police Dealy's withdrawals from the account.

We fully agree with the trial court's findings of fact and conclusion of law. The judgment and decree is, therefore,—Affirmed.

All JUSTICES concur.